IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VICTORIA L. WILLIAMS    :

    Plaintiff    :

 vs.        :   Civil Action No. L-01-CV-2780

HOWARD COUNTY, MARYLAND  :

    Defendant    :

::::::::::::::::::::::::::::::::::::::::::::::

## DEFENDANT'S REPLY MEMORANDUM

Howard County, Maryland (**"the County"**), by its attorneys, Barbara M. Cook, County Solicitor, and Richard E. Basehoar, Senior Assistant County Solicitor, submits this memorandum of law in reply to the Plaintiff's Memorandum in Opposition to the County's Second Motion to Dismiss (**"the Plaintiff's Opposition"**),[1] and in further support of its Second Motion to Dismiss.

## I.  THE PLAINTIFF'S OPPOSITION

While not explicitly so stated at pages 6 through 10 of the Plaintiff's Opposition, the Plaintiff advances three basic arguments to oppose the County's Second Motion. These arguments are, including

---

[1] In this memorandum the County will again use the terminology adopted by the Court in its Order dated September 4, 2002, and will refer to the matters presently before the Court as the County's Second Motion. References to Exhibits in this memorandum shall also be made in the same manner as in the County's Second Motion, except that Exhibits appended to this memorandum shall be made as follows: (Reply Ex.__ or Exs.__, __ ).

each of the specific allegations made by the Plaintiff:

1.   The proceedings of the Howard County Personnel Board (**"the Board"**) did not afford the

Plaintiff an adequate opportunity to develop the transaction of her discharge because:

a)  the Plaintiff "was not permitted to present all of her claims" and was "limited to attempting to rebutt (sic) the rationale advanced by Commissioner (sic)[2] Pereira for her [the Plaintiff's] termination" (Plaintiff's Opposition, p.7);

b)  the Board "does not permit multiple kinds of relief or substantive theories" (Plaintiff's Opposition p. 8);

c)   the Board "permits no discovery and is satisfied with surprise at trial" (Plaintiff's Opposition, p. 8); and

d)  the Board "did not tolerate amendment and allowed Plaintiff to mention retal-iation only because the word appeared in Commissioner (sic) Pereira's Termination Charges" ( Plaintiff's Opposition, p.8) .

2.  Neither the doctrines of claim or issue preclusion can be applied because:

a) "the state court opinion holds that Plaintiff was limited to the grounds advanced at her pre-termination 'meeting' even before she had appealed to the Personnel Board" (Plaintiff's Opposition, p. 7);

b) "the only aspect of her [the Plaintiff's] present action which she [the Plaintiff] was permitted to present to the Personnel Board was the part of her Title VII count which addresses retaliation for the 1998 testimony [meaning Plaintiff's testimony to the Board]" (Plaintiff's Opposition, p. 8);

c) "only one issue in the current litigation was actually litigated - retaliation for 1998

---

[2]For reasons not apparent to the County, the Plaintiff has referred to the Director of the County's Department of Corrections, Melanie Pereira, as "Commissioner" throughout the Plaintiff's Opposition.  As the title "Director" has at all other times been used to describe Ms. Pereira, the County will continue to use the term "Director" in this reply, except where quoting from the Plaintiff's Memorandum.

testimony" and thus "there was no identical issue decided by the Personnel Board, there was no final judgment on the merits (as opposed to on grounds of mootness and inapplicability)" (Plaintiff's Opposition, p. 9, including footnote 2, and p. 10); and

d) "Counsel for the County recognized [the Board's decision could not be accorded preclusive effect] when he stated at the hearing [before the Board] that the 'ruling of an appeal before the Howard County Personnel Board does not preclude an individual from filing a federal lawsuit . . . or going any other place they please and have the opportunity to pick the forum in which they're going to bring their claims and pursue them there.'"

3. This Court's decision to dismiss the Plaintiff's Title VII claim with prejudice on December 9, 1998 does not preclude her current claims because:

a) the County's argument on this point "was previously denied pending completion of discovery" (Plaintiff's Opposition, p. 10, footnote 3); and

b) "the facts of this case are utterly different than those of the cited authority in which, for instance, the facts on which the second case were based were known to the Plaintiff before he filed the first case. Bailey v. USX Corp., 658 F. Supp. 279, 281 (N.D. Ala. 1987)."

## II. STATEMENT OF UNCONTRADICTED MATERIAL FACTS

Except for a disagreement  with the County concerning the matters encompassed within the judgment of the Circuit Court for Howard County, Maryland (**"the State Court"**), which is  readily resolved by reading the State Court's Judgment, as the Judgment speaks for itself, the Plaintiff has contradicted none of the material facts which were recited at pages 6-15 of the County's Second Motion, and  supported both by exhibits and affidavit.  For the convenience of the Court, the pertinent uncontradicted facts are summarized and repeated here:

1. By Charter, the Board is authorized to hear and finally decide appeals brought by the County's employees, and is required to hear all appeals arising from disciplinary actions

"involving a loss of job," as well as appeals alleging violations of "federal, state, or county human rights law."

2.  By ordinance, the Board is given the power to administer oaths, compel the attendance of witnesses and require the production of documents and other materials.

3.  At all times pertinent to the Plaintiff's claim, the Board's procedures provided that all persons who were discharged or who claimed violations of federal, state or county human rights laws would have the right to: a) a *de novo* evidentiary hearing before the Board; b) at the employee's option, a closed hearing or one which was open to the public; c) representation by counsel or other representatives during the proceedings; d) subpoena witnesses, documents and other evidence;  e) produce and cross-examine witnesses; and f) make an opening statement and closing argument to the Board.

4.  At all times  pertinent to the Plaintiff's claim, the Board's own rules (Second Motion Ex. 5), promulgated pursuant to the County's Administrative Procedure Act, established a pre-hearing process, which required the parties to submit pre-hearing statements and attend a pre-hearing conference, and established an order of presentation that, among other things previously recited, provided both parties the opportunity to call and cross-examine witnesses, and to call rebuttal witnesses.

5.  On September 28, 1998, at the same time Plaintiff was pursuing a Title VII case against the County in this Court,  Director Pereira served Charges of Dismissal on the Plaintiff which informed the Plaintiff that videotape surveillance of her activities commissioned by the County's workers' compensation administrator revealed, among other things, that Plaintiff had kissed and engaged in other activities with a superior officer in violation of a Department of Corrections ("**DOC**") policy which prohibited unprofessional relationships between officers, and that Plaintiff had testified falsely under oath in proceedings before the Board on June 11, 1998 in an attempt to conceal this unprofessional relationship.

6.  On September 30, 1998, the Plaintiff requested that the pre-termination hearing date established in the Charges of dismissal be continued, and on this same date asked, through counsel, that this Court dismiss her pending Title VII lawsuit without prejudice.

7.  On November 4, 1998, the Plaintiff appeared at a pre-termination hearing with both counsel and her union representatives, but did not address the charge that she had engaged in an unprofessional relationship in violation of DOC policy.

8.  The Plaintiff's dismissal was made final on November 13, 1998.

9.  On November 24, 1998, the Plaintiff timely noted an appeal to the Board on the grounds that she "was not terminated for just cause but in retaliation for my having filed a charge of discrimination against the County and for pursuing a workers' compensation claim resulting from an on-the-job injury."

10.  On December 3, 1998 the Board directed, among other things, that both parties file pre-hearing statements and attend a pre-hearing conference on January 11, 1999.

11.  On December 9, 1998, this Court denied the Plaintiff's request that her Title VII lawsuit be dismissed without prejudice, finding specifically that the Plaintiff's dismissal had not "been shown to have a direct relationship" to Plaintiff's federal lawsuit.

12.  On December 23, 1998, the Plaintiff cross-filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the County's own Office of Human Rights ("**OHR**"), claiming that:  a) she had been retaliated against "when I was secretly followed and video taped (sic) by a private investigator immediately after my charge of discrimination was dismissed by the Personnel Board; b) the County had terminated her for her testimony to the Board "when it took out of context and mischaracterized my testimony regarding my personal relationship with Captain Dunst, before the Board;" c) her discharge was "in retaliation for my charge of discrimination to the Board and to undermine my then active charge against the Respondent (the County) in Federal District Court;" and d) she possessed a "perceived handicap (neck injury requiring two operations)," and had been discriminated against "based on my perceived handicap" because the County "maintained that I was capable of working despite the fact that my neurosurgeon stated otherwise," and "terminated me to save money."

13.  In filing her pre-hearing statement with the Board on January 4, 1999, the Plaintiff stated the dismissal decision was "clearly erroneous, arbitrary and capricious and [acted] contrary to law" because the Plaintiff had been following her physician's instruction that she not work, had not knowingly made any false testimony to the Board in earlier proceedings, and had not acknowledged conduct unbecoming an officer of DOC.  The Plaintiff requested that subpoenas be issued to compel the attendance of Director Pereira and her treating physician, and the production of thirteen separate categories of documents, records and other tangible evidence.

14.  In order to obviate the necessity for the issuance of subpoenas, the County voluntarily

produced all documents and evidence requested by Plaintiff, and the parties stipulated and agreed to make 81 separate exhibits, including the Plaintiff's personnel file, a part of the record of the Board in a detailed Agreed Statement of Facts which contained 93 paragraphs.  The County also agreed to make Director Pereira available to provide testimony during the Plaintiff's case without subpoena.

15.  A pre-hearing conference was held before the Personnel Board on January 11, 1999,[3] and *de novo* hearings upon the Plaintiff's appeal were conducted by the Board between February 4, 1999 and April 11, 1999, during which the Plaintiff made an opening statement, called and cross-examined witnesses under oath, and made a closing statement to the Board.

16.  The Plaintiff did not, in making her opening statement to the Board on February 4, ascribe any retaliatory or discriminatory motive to Director Pereira in making her decision. Plaintiff asserted instead that Plaintiff "was not trying to blame Ms. Pereira," and that the Plaintiff would prove that the County's workers' compensation administrator "went to Ms. Pereira to get her [Plaintiff] fired" as a cost-savings measure.  The Plaintiff suggested that Director Pereira had been duped into doing something that should not have been done.

17.  On March 25, 1999, however, after the existence and substance of the Plaintiff's EEOC charges were revealed and examined in cross-examination in two separate sessions before the Board, the Plaintiff sought leave to amend her appeal to include a claim of retaliation.[4]  The Plaintiff did not, however, request an amendment that would have

_____

[3]This specific fact was not referenced in the County's recitation of facts set forth in its Second Motion, but is recited in the Board's Decision and Order, which was referenced and included in the recitation of facts.  The transcribed record of the entirety of the Board's pre-hearing conference is appended as Reply Ex. 1.

[4]In its recitation of facts in the Second Motion, the County did not specifically detail the reasons advanced by the Plaintiff for requesting the amendment, but did incorporate the entirety of the transcript of the proceedings before the Board in connection with this issue by referencing Ex. 13 of its First Motion, at pages 373-382.  The Plaintiff, oppositely, appended only pages 369, and 376-382 as part of its Exhibit 2 to the Plaintiff's Opposition.  As it is the County's position, for reasons more fully stated hereafter, that the Plaintiff fails to act with candor in connection with certain factual allegations and arguments that it makes to this Court, the County appends pages 370-376 of the transcript of the proceedings of the Board on March 24, 1999 as Reply Ex. 2.  These pages reveal that the Plaintiff moved to amend her appeal to

permitted her to allege a violation of the Americans With Disabilities Act of 1990, §107(a), 42 U.S.C. §12117(a) (**"ADA"**).

18.  When the Plaintiff made her closing argument to the Board on April 1, 1999, it was her position that her 1998 testimony to the Personnel Board, even if perjured, was protected participation activity under Title VII (Reply Ex. 3).

19.  On August 3, 1999, the Board unanimously affirmed the County's dismissal decision by finding, among other things, the Plaintiff had engaged in an undisclosed, intimate and unprofessional relationship with a superior officer in violation of the policies of the DOC, and that Plaintiff had produced no evidence to support her claim of bias or retaliation.

20.  The Plaintiff timely noted an Appeal to the State Court on August 27, 1999.

21.  As a result of the Plaintiff's election to appeal the Board's decision to the State Court, OHR notified Plaintiff on or about February 5, 2001 that it would administratively close its case and pass Plaintiff's charge to the EEOC;

22.  The County was notified by the EEOC on May 10, 2001, the Plaintiff's EEOC complaints had been withdrawn.

23.  The EEOC rescinded its notice of withdrawal on May 22, 2001.

24.  The EEOC issued a right to sue letter to the Plaintiff on May 23, 2001.

25.  The Plaintiff initiated the instant proceedings on August 21, 2001.

26.  The State Court affirmed the Board's Decision and Order on April 17, 2002.

---

include the claim that Plaintiff **"was terminated because of retaliation for a prior charge of discrimination"** on a number of grounds, including the grounds that: 1) "the dismissal which began these proceedings acknowledges awareness of claims that the termination was motivated by retaliation for the previous discrimination claim and the workers' compensation claim;" 2) "Mr. Basehoar's comments [the County's counsel] and Exhibit A show the County's awareness of those claims;" 3) "the great majority of the evidence" in this case "bears either on the previous charge of discrimination, and in Ms. Williams' testimony before this Board relative to that charge, and *even in the Federal lawsuit* thereafter and also the workers' compensation claim which is all over the Agreed Statement of Facts."(Emphasis supplied).

### III. <u>ARGUMENTS</u>

**A.    Plaintiff had full and fair opportunity to develop the entire transaction of her discharge in the proceedings before the Board.**

In the Plaintiff's Opposition, the Plaintiff does not, because she cannot, challenge the County's argument that the Supreme Court's decision in <u>Kremer v. Chemical Construction Corp.</u>, 456 U.S. 461, *reh'g denied*, 458 U.S. 1133 (1982) instructs federal courts that a state court decision must be given preclusive effect in federal court, even when it arises in a situation where the state court's role was limited to reviewing the decision of a state administrative agency under an abuse of discretion standard, as long as the party against whom the earlier decision is asserted in bar has been given a "full and fair opportunity" to litigate the decision. The Plaintiff also did not, because she cannot, challenge the County's argument that <u>Kremer</u> provides the "full and fair opportunity" requirement will be presumed to have been met whenever **"state proceedings . . . satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause."** 456 U.S. at 481. Nonetheless, ignoring entirely the plain facts that the Board's procedures permitted the Plaintiff to raise all the claims she raises here, failing to comprehend the differences between the factual scenario presented in the instant case and that in the cases cited by the County,[5] and advancing no authority for the proposition that an opportunity for discovery must be provided in state proceedings if they are to comply with the minimum procedural requirements of the Fourteenth Amendment, Plaintiff argues that she was not afforded an adequate opportunity to litigate her

---

[5]Plaintiff advances no authority other than that already provided in the County's Second Motion.

claims.

      1.  *Plaintiff could have but did not bring her present claims before the Board.*

The Plaintiff does not proceed with candor towards the Court when she baldly asserts that "she was not permitted to present all of her claims," "was limited to attempting to rebutt (sic) the rationale advanced by Commissioner (sic) Pereira for her termination" and that the Board "does not permit multiple . . . substantive theories." The provisions of the County's Charter, Code, Employee Manual, and the Rules of the Board which were presented as part of the County's Second Motion plainly indicate that County employees have the right to appeal all matters which the Plaintiff advances in this Court: that is, alleged violations of **"federal, state, or county human rights law,"** including Title VII and the ADA. In addition, the Plaintiff has not contradicted the County's assertion, again because she cannot, that the proceedings before the Board were *de novo*. There simply was not, as Plaintiff alleges without any basis, any institutional impediment to the Plaintiff's ability to address all issues that she raises here before the Board.

The Plaintiff also does not proceed with candor towards the Court when she states that the Board "did not tolerate amendment and allowed Plaintiff to mention retaliation only because the word appeared in Commissioner (sic) Pereira's Termination Charges." In the first instance, Director Pereira's Charges of Discrimination do not even mention the word "retaliation" (First Motion Ex. 1 at ASF Ex. 67). The Board, moreover, permitted every amendment that the Plaintiff sought (Reply Ex. 2). More particularly, the pertinent excerpts of the transcript that were not disclosed in the Plaintiff's Opposition, but which the

County reveals here, indicate that it was the Plaintiff who asked the Board to amend her appeal because "the dismissal which began these proceedings acknowledges awareness of claims that the termination was motivated by retaliation for the previous discrimination claim and the workers' compensation claim." Indeed, and quite the opposite of the Plaintiff's unsubstantiated claim that she was not permitted to bring multiple theories before the Board, including the specific claims that she makes in this Court, the same excerpts reveal that the Plaintiff did not seek to amend her appeal to raise an ADA claim, but did seek and receive permission to amend her claim of retaliation to include retaliation for: 1) her prior testimony to the Board; 2) her "Federal lawsuit," to include the prior charge of discrimination upon which it was based; and 3) the filing of a workers' compensation claim against the County. It is not the case, in short, that the Plaintiff was not given the opportunity to present multiple legal theories, including those she raises here. It is the case instead, as Reply Ex. 3 reveals, that the Plaintiff did not advantage herself of the opportunity given her. It is the Plaintiff, not the County, who must explain why she did not make an ADA claim, or raise the retaliation claims she seeks to pursue here in her closing argument to the Board.[6]

_____

[6]While the County, through counsel, did indeed object to the amendments requested by Plaintiff, it bears repeating that the Plaintiff's request for amendment, and the County's objection thereto, came on March 25, 1999, the third evidentiary session before the Board. Before this hearing, the Plaintiff had represented both that "she was not trying to blame Ms. Pereira," and that she did not intend to suggest to the Board that Ms. Pereira was retaliating against her. Instead she stated that she was suggesting only that "Ms. Pereira would be perceived as retaliating against her." There should and can be no suggestion, in short, that the County, through counsel or otherwise, attempted to restrict the Plaintiff in bringing multiple theories in initiating her case before the Board. The County's objection, instead, was intended to object and draw attention to Plaintiff's ever-changing and flip-flopping claims; claims that the State Court described as a "**quagmire of confusion**" in its Judgment at page 40.

- 10 -

2. *The minimum procedural requirements of the Due Process Clause do not include the opportunity for discovery.*

Turning next to the Plaintiff's complaint that she was not permitted discovery, and while it is true that neither the Charter, nor the Board's governing ordinance or rules provide for the mechanism of discovery of the kind available in civil cases, it is not necessary that the Board's procedures provide such discovery for the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause to be satisfied. Putting aside the fact that the Plaintiff has offered no authority to support her argument, the precedent of this Court indicates the state proceedings offering far less process than the Board's proceedings confer have been found to satisfy the requirements of Kremer. For example, in Wool v. National Capital Park and Planning Commission, 664 F. Supp 225, 230-231 (D.Md. 1987), this Court, noting that no single model of procedural fairness is dictated by the Due Process Clause, found the inability of a Prince George's County merit system employee to subpoena and cross-examine witnesses under oath did not prevent the Court from giving preclusive effect to the decision rendered by the county's Merit System Board. The Court found that the merit employee had received sufficient process through notice of the adverse action, the opportunity for a hearing, the opportunity to present witnesses and evidence and cross-examine witnesses, and the receipt of a written decision. A similar result was reached by this Court in Bethesda Ford, Inc. v. Ford Motor Co., 572 F. Supp. 623, 629 (D.Md. 1983), a case referenced in the Plaintiff's June 3, 2002 correspondence to the Court, but not contained in the Plaintiff's Opposition. In that case the Court found that the Kremer standard was amply satisfied in circumstances where the litigant was represented by counsel, had the opportunity to cross-examine witnesses, introduced several

- 11 -

days of testimony and a number of exhibits, and received a written decision.

The County notes, additionally, that the Board is not "satisfied with surprise at trial" as represented by the Plaintiff at page 7 of the Plaintiff's Opposition. To the contrary, the Board's pre-hearing procedures, which require both parties to submit a pre-hearing statement, identify all evidence, and produce all documents upon which they intend to rely, is specifically designed to prevent surprise. Conspicuously, at page 8 of the Plaintiff's Opposition, in referencing passages from the Court of Appeals' decision in Kent County Board of Education v. Bilbrough, 309 Md. 487, 499, 525 A.2d 232, 238 (1987), the Plaintiff is quite selective in her recitation of those portions of the comments of American Law Institute's Restatement (Second) of Judgments, §24, which are therein contained. The Plaintiff fails to inform the Court that these comments also provide that "[T]he pretrial conference contributes to the same end [as discovery] of developing the whole case."    The Plaintiff has not, moreover, articulated any reason why the lack of discovery precluded her from having a full and fair opportunity to present her case. While the Plaintiff appears to complain now, for the first time, that she was denied the opportunity through discovery to see the videotape of her activities with her superior, Captain Dunst, she does not explain why the lack of this opportunity affected her ability to present her case. Clearly, as Director Pereira's Charges of Dismissal disclosed that the videotape revealed the Plaintiff and her supervisor kissing and engaging in other actions that evidenced an intimate and unprofessional relationship between them (First Motion Ex. 1 at ASF Ex. 67), Plaintiff cannot claim, since she certainly knew or should have known whether she had done what Director Pereira alleged, that she was surprised at what the videotape contained. In addition, and just as

importantly in the face of this Court's decision in <u>Batts v Lee</u>, 949 F. Supp. 1229, 1233 (D.Md. 1996),

if it was the Plaintiff's position that the Board's procedures were inadequate, Plaintiff had both the

responsibility and opportunity to challenge the alleged inadequacies of the Board's procedures. As the

transcript from the pre-hearing conference (Reply Ex. 1), the excerpts from the transcript of the

proceedings before the Board on February 4, 1999 (Reply Ex. 4), and the contents of the State Court's

Judgment reveal, the Plaintiff has not previously complained in the manner she does here.[7]

     3.     *The unavailability of a particular remedy does not permit the Plaintiff to re-litigate her claims in this Court.*

While it is also true that the Board is limited in the remedies that it may provide to modifying the

penalty imposed, a power which permits the Board to order reinstatement with back-pay and the full

restoration of all benefits, this limitation does not mean that the Plaintiff has the right to pursue claims against

the County in this Court. As the cases cited by the County in its Second Motion, and repeated by the

Plaintiff in the Plaintiff's Opposition reveal, the Court of Appeals of Maryland has never held that a litigant,

who could have but did not pursue all possible legal theories as to the "transaction," "claim," or "cause of

action" that was involved in the initial proceedings, could re-litigate the entirety of the "transaction" in a

---

[7]Far from complaining about the County or the Board procedures, the excerpts from the proceedings before the Board on February 4, 1999 (Reply Ex. 4) reveal that the Plaintiff thanked the County for its efforts in compiling the necessary evidentiary documents and records as part of the parties' Agreed Statement of Facts, and made no request of the Board that she be permitted to see the videotape before proceeding.

second forum simply because one or more remedies were not available to her in the initial proceedings.[8]

In each of the Maryland cases which have been cited where preclusion was not permitted, the litigant against whom the earlier decision was asserted in bar could not have raised the particular legal theory or challenge in the prior action. *See:* <u>FWB Bank v. Richman</u>, 354 Md. 472, 731 A.2d 916 (1999) (holding that where a bankruptcy court had instructed and required litigants to litigate a particular legal issue in state court, and the same litigants had ceased to be a party to the bankruptcy proceedings when certain other matters were adjudicated, the litigants would not be precluded from proceeding in state court by the judgment of the bankruptcy court); <u>Gertz v. Anne Arundel County</u>, 339 Md. 261, 661 A.2d 1157 (1995) (holding that the County could not be precluded from seeking injunctive relief to enforce an ordinance that had not, because it had not yet been enacted, been a part of the prior proceedings); <u>Shum v. Gaudreau</u>, 317 Md. 49, 562 A.2d 707 (1989) (holding that a landlord would not be precluded from seeking contract damages where the contract claim could not have been joined with summary ejectment and rent proceedings in the district court, but that landlord would be precluded from re-litigating all matters that could have been decided by the district court); <u>Murray Intl. Freight Corp v. Graham</u>, 315 Md. 543, 555

---

[8]Plaintiff is mistaken when she suggests that <u>Batts v. Lee</u>, 949 F. Supp. 1229 (1996), supports the proposition that claim preclusion will not apply if a litigant has not had the ability to pursue all of one's remedies in a single action. <u>Batts</u> says, instead, relying on the Court of Special Appeals decision in <u>Esslinger v. Baltimore City</u>, 95 Md. App. 607, 622 A.2d 774 (1993), a case cited by the County, that the ability to pursue all of one's remedies "may" be a reason for not imposing claim preclusion, and disposes of the case upon the doctrine of issue preclusion. This may also be done in this case, for reasons stated hereafter.

A.2d 502 (1989) (holding that workers' compensation decision that was *not* reviewed by a state court, which found both that the claimant was an employee, but also that the claimant had not suffered an accidental injury, would not preclude the trucking company from denying the existence of an employment relationship in state court proceedings, since the trucking company did not have the ability to appeal a workers' compensation decision that did not confer a benefit); and <u>Kent County Bd. of Educ. v. Bilbrough</u>, 309 Md. 487, 525 A.2d 232 (1987) (holding that while a litigant would not be precluded from bringing an action for invasion of privacy for an alleged invasion of police files, the litigant would be precluded, **"[B]ecause the motive for termination has been adjudicated,"** from attempting to prove and recover lost income upon the theory that his privacy had been invaded and he had been placed in a false light to create a plausible reason for his discharge (emphasis supplied)).  In the present case, unlike any of the foregoing cases, the Plaintiff could have raised all of her different theories in the proceedings before the Board, and did not raise any matter that was separated in time or space from the transaction of her discharge.  <u>Bilbrough</u> instructs us, in fact, that because the motive for the Plaintiff's discharge has been adjudicated, with the Board and State Court both ruling that there were just, substantial and non-pretextual reasons for the Plaintiff's discharge, the Plaintiff is precluded from challenging the County's motive or reasons for its discharge decision in a second proceeding.

The Plaintiff's argument that the provision of a more limited remedy in State Court proceedings will always permit a litigant to re-litigate her claims in federal court, if accepted, would mean that claim preclusion would not apply in any case where a constitutional or federal question was implicated or could

be interposed as part of a civil service, merit board, police board or tenure commission proceeding.  The federal cases cited by the County in its second motion, which the Plaintiff has not addressed, let alone distinguished, indicates that this argument must fail.  In addition, as this Court specifically noted at the hearing held in this matter on January 3, 2003, and in its decision in <u>Dixon v. SSA Baltimore Federal Credit Union</u>,  822 F. Supp 302, 304, footnote 3  (D. Md. 1992), referencing the Fifth Circuit's decision in <u>Hogue v. Royse City, Texas</u>, 939 F.2d 1249, 1255-56 (5th Cir. 1991), the Plaintiff had the option of having the Board's decision reviewed in State Court, or bringing her Title VII and ADA claims in federal court after their consideration by the EEOC.  Having made the strategic decision, or taken the "calculated risk" of proceeding in the State Court, the Plaintiff should not be heard to complain that she cannot now proceed in this court.

**B.    This Court must give preclusive effect to the Judgment of the State Court.**

Mixing her discussion of the doctrines of claim and issue preclusion at pages 6 through 10 of Plaintiff's Opposition, the Plaintiff suggests both that because she did not raise an ADA claim before the Board or the State Court, and the Title VII issue decided by the Board and the State Court involved only the question of whether the County violated Title VII by charging that she had lied in her sworn testimony to the Board in 1998, she is not precluded from bringing an ADA claim or a different Title VII claim in this Court.  She also appears to suggest that because the County, through its counsel, advised the Board that its decision would not preclude the Plaintiff

from, among other things,  pursuing discrimination claims with the EEOC or in federal court, the County

is somehow estopped from raising the question of preclusion in this Court. Both of these arguments demonstrate that the Plaintiff misapprehends the applicable law. While the County has demonstrated in its previous argument that the Plaintiff could have but did not raise the claims she makes here before the Board, the County will address in this section the reasons why the State Court's Judgment requires the dismissal of the Plaintiff's claims under the doctrine of issue preclusion alone.

1.   *The Plaintiff does not accurately represent the substance of the Board's Decision and Order or the Judgment of the State Court.*

The Plaintiff again does not proceed with candor towards the Court when she describes the matters which were decided by both the Board and the State Court. First, addressing the Board's decision, the Board did not in any way limit its finding that the County had not retaliated against the Plaintiff to the issue of the Plaintiff's 1998 testimony to the Board concerning her relationship with her superior, Captain Dunst. While the Plaintiff raised only the matter of her prior testimony to the Board in claiming a Title VII violation in her closing argument, the Court is reminded that the Plaintiff mentioned both her federal lawsuit and her workers' compensation claim in seeking leave to amend her appeal to claim retaliation on May 25, 1999 (Reply Ex. 2). In addition, the Agreed Statement of Facts which the Plaintiff submitted to the Board recited the entirety of the discrimination claims that the Plaintiff had previously made, tracked the history of her prior lawsuit in this Court, and detailed the entire course of her workers' compensation claim (First Motion Ex.1, ASF). With these matters before it, the Board's findings and conclusions with respect to the Plaintiff's retaliation claims were as follows:

2. Further, a reasonable person in Pereira's position could have reached

- 17 -

the same conclusion with respect to the Appellant's June 11, 1998 testimony before the Personnel Board:  that Appellant attempted to mislead and/or conceal from this Board the extent and nature of her relationship with Captain Dunst.  The Board finds significant that, when confronted by Pereira with the videotape surveillance, Captain Dunst confirmed the existence of his intimate relationship with the Appellant and tendered his resignation the next day.

4.  Likewise, the Board found no support for Appellant's contention that Pereira was biased against her based on prior grievances or claims pursued by Appellant.  As a newcomer to County government, Pereira herself played no role in any of the earlier personnel issues involving Appellant.  Thus, the Board sees no reason to conclude that Pereira was "biased" against Appellant arising out earlier personnel issues pertaining to Appellant  (County's First Motion, Ex. 18).

The Board's own words demonstrate, contrary to the Plaintiff's representation, that it considered all of the various claims of bias made by the Plaintiff at any time during its proceedings.  It decided not that its own proceedings were not Title VII proceedings, but instead that Director Pereira would have no motive to retaliate against the Plaintiff for matters that she did not know about because they occurred before Director Pereira's employment by the County.  Thus, the Board's finding and conclusion that it found no support for Plaintiff's complaint of bias based on previous claims, the Board's decision must be fairly read to include not only the Board's proceedings, but the Plaintiff's prior charge of discrimination and lawsuit in this Court.

The Plaintiff also does not proceed with candor towards the Court when she represents, at pages

3 and 10 of the Plaintiff's Opposition, that the State Court made no findings on the merits of the Plaintiff's

claims, but rendered its decision on the grounds of:  1) "mootness" in connection with the Plaintiff's

contention that she had not engaged in an unprofessional relationship in violation of DOC policy; and 2)

"inapplicability" in connection with the Plaintiff's contention that because her dismissal was in part

predicated on false testimony that she had given in proceedings before the Board in 1998, she had been

retaliated against in violation of Title VII for protected participation activity.[9]  These representations are

patently false.  In demonstrating why this is so, the County first refers the Court to pages 11 through 20 of

the State Court's Judgment.  While it is true that the State Court expressed at pages 11 and 12  that its

review of the record caused it to conclude that the Plaintiff had failed to properly raise and preserve this

issue before both Director Pereira and the Board, the State Court nonetheless gave Plaintiff every benefit

of the doubt, and fully considered the Plaintiff's contention on this point.  At pages 12-20 of its Judgment,

the State Court engages in a painstaking analysis of the record and Maryland law, and concludes, among

other things, that: 1) Maryland law does  not require the County to prove that the Plaintiff's unprofessional

---

[9]As indicated in the County's First Motion, the Plaintiff first argued to the State Court that the
Plaintiff's prior testimony to the Board in 1998 was protected "participation activity." The County
responded by pointing out that one's false testimony in a personnel grievance proceeding is not protected
participatory activity because such proceedings are not Title VII proceedings.  Then, again changing her
theory and argument in the seriatim manner that has characterized her conduct throughout this case, the
Plaintiff argued both that  the County's position was wrong, and that because the Plaintiff had also filed a
Charge of Discrimination with the Maryland Commission of Human Relations prior to her testimony to the
Board, the basic allegations of which  were the same, her dismissal violated Title VII (First Motion Exs.
20, 21 and 22).

conduct had actually compromised the chain of command; 2) the DOC policy did not require an adverse outcome before Director Pereira would be allowed to dismiss the Plaintiff; 3) the DOC policy also provides that relationships that result in an appearance of impropriety are forbidden; and 4) the evidence before the Board amply supported that there was an actual perception that the Plaintiff was being given special or partial treatment by her supervisor.

Similarly, with respect to the Title VII retaliation claim, it is true that the State Court found that the Plaintiff's prior testimony to the Board in 1998 could not be considered Title VII participation activity, and that the County had not, therefore, engaged in retaliation prohibited by Title VII in basing its discharge decision, in part, on the Plaintiff's false testimony under oath. The State Court's finding on this point, however, is not found on page 25 of the Judgment as the Plaintiff claims at page 3 of Plaintiff's Opposition. What is found at page 25 of the Judgment, at footnote 24, is a recitation of the Plaintiff's inconsistent and ever-changing theory of her retaliation claim. Thereafter, between pages 25 and 31 the State Court analyzes the entirety of the record to conclude, at page 31, that Plaintiff's complaint was that her testimony to the Board was protected participation activity under Title VII, and that it was the State Court's view that it was not. Even though the Court indicates that this finding might properly end its review, "for purposes of a complete review" of the Plaintiff's alleged retaliation claim, the Court again assumed that the Plaintiff's prior testimony was protected participation activity. Despite this, and after engaging in another 8 pages of careful and critical analysis, the State Court concluded, on page 40 of its Judgment, that the County had provided legitimate and non-pretextual reasons for the Plaintiff's discharge.

- 20 -

The foregoing facts, aside from showing that the Plaintiff has not been candid with the Court, demonstrates that the entirety of the Plaintiff's retaliation claims in this Court have been considered and rejected by the State Court.

     2.     *The County's statements to the Board, through counsel, on May 25, 1999 are correct and accurate statements of the applicable law enunciated by the Supreme Court in* University of Tennessee v. Elliot, *478 U.S. 788 (1986).*

As noted above, the Plaintiff appears to suggest that the County's statement to the Board on May 25, 1999 that the Board's decision would not prevent the Plaintiff from proceeding before the EEOC or in this Court somehow demonstrates a recognition or admission on the part of the County that Plaintiff is not precluded from re-litigating her claims in this Court. This argument demonstrates that Plaintiff does not yet comprehend that it is not the Personnel Board's decision which precludes her claims in this Court, but instead her election to have the Board's decision reviewed by the State Court. In Elliot, the Court held that Title VII prevented federal courts from giving preclusive effect to the unreviewed decisions of a state administrative agency. Thus, the representations made to the Board were correct, and cannot be used by the Plaintiff to forestall the application of 28 U.S.C. §1738 for reason of the Plaintiff's tactical decision to have the Board's decision reviewed by the State Court.

     3.     *The doctrine of issue preclusion alone bars the Plaintiff's claims in this Court.*

The County need say little about the Plaintiff's inconsistent claims, on pages 9 and 10 of Plaintiff's Opposition respectively, that there is "only one" and "no identical issue" between the current litigation and

- 21 -

the issues addressed in the State Court's Judgment, as these contentions are supported by none of the cases cited by either party. The Plaintiff simply confuses the concept of legal theories with issues of fact and law.

As a result of the Board's proceedings and the State Court proceedings, the same parties which are before this Court actually litigated: 1) the question of whether there were legitimate, non-pretextual reasons for the County to discharge the Plaintiff, a question of fact; and 2) the question of whether the County's dismissal of the Plaintiff constituted illegal retaliation under Title VII, a question of law. The State Court, a court of competent jurisdiction, determined both that there were legitimate, non-pretextual reasons for the County to discharge the Plaintiff, and that the Plaintiff had not violated Title VII. Thus the Plaintiff can raise no Title VII retaliation claim in this Court. And, while the State Court did not decide the legal issue of whether the County violated the ADA, as it was a legal issue that the Plaintiff could have but did not bring before the Board, the State Court's factual determination that there were legitimate, non pretextual reasons for the County to discharge the Plaintiff is not subject to challenge in this Court. Both Bilbrough and this Court's decision in Harris v. Maryland House of Correction, 209 F. Supp. 2d 565, 571 (D.Md. 2002) instruct us that where there is a factual determination by a court of competent jurisdiction that a discharge is prompted by a motive that is not improper or illegal, or that an employee has been discharged for cause, this Court must give preclusive effect to these determinations.

- 22 -

C.    **The dismissal of Plaintiff's prior lawsuit in this Court also precludes the Plaintiff's claims in this Court.**

As the County noted in its Second Motion, it raised the above argument so that no claim could be made that this argument had been waived.  Because the State Court's Judgment and doctrines of preclusion require the dismissal of the claims made by the Plaintiff in this Court, the County responds only briefly to the arguments made in footnote 3 on page 10 of the Plaintiff's Opposition, and notes that the facts of this case are not "utterly different" from those set forth in <u>Bailey v. USX Corp</u>., 658 F. Supp. 279, 281 (N.D. Ala 1987).  It is not significant, as Plaintiff suggests, that the Plaintiff in the reported case was aware of the facts on which his second case was based before he filed his first case.  It is significant instead, that the plaintiff in the reported case, like the Plaintiff here, was represented by the same attorney in both cases, and did not advise the Court, in asking the Court to take action with respect to the first pending claim, that the Plaintiff had it in mind to return to the Court with a retaliation claim based on the pending action.

## IV.  <u>CONCLUSION</u>

The Plaintiff here seeks to re-litigate matters that have been fully and fairly litigated  by the parties, and decided by the State Court.  The Plaintiff seeks what Maryland law and 28 U.S.C. §1738 simply do not allow, in order to escape the consequences of a tactical decision which she herself made. The County respectfully requests, for all the foregoing reasons, and for the reasons set forth in the County's Second Motion, that the Plaintiff's claims in this Court be dismissed, and that the County be relieved of the expense and vexation which has been caused by the Plaintiff's multiple proceedings.

- 23 -

HOWARD COUNTY OFFICE OF LAW


_____/s/_____
Barbara M. Cook
County Solicitor
(signed by Richard E. Basehoar with
permission of Barbara M. Cook)


_____/s/_____
Richard E. Basehoar
Senior Assistant County Solicitor
Trial Bar No. 02764
George Howard Building
3430 Courthouse Drive
Ellicott City, Maryland 21043
(410) 313-2104